UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Deandre Lashawn Robinson,

        Defendant.

File No. 21-cr-219 (ECT/DTS)

**ORDER ACCEPTING REPORT
AND RECOMMENDATION**

Magistrate Judge David T. Schultz has issued a Report and Recommendation [ECF No. 101] ("R&R") concerning six suppression motions filed by Defendant Deandre Lashawn Robinson [ECF Nos. 30, 31, 66, 67, 68, and 80]. Robinson objects to all but one of Magistrate Judge Schultz's recommendations.[1] Because Robinson has objected, the R&R will be reviewed *de novo* pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3). Robinson's objections will be overruled, and Magistrate Judge Schultz's recommendations will be accepted. This order presumes familiarity with the R&R.

### *Warrantless Vehicle Search – August 11, 2021*

On August 11, 2021, Minneapolis Police Department officers arrested Robinson after he parked his automobile on a residential street in Brooklyn Park, Minnesota. After arresting Robinson and detaining a passenger who was with Robinson, officers searched the vehicle. Officers lacked a warrant to search the vehicle. During the search, officers

---

[1] Magistrate Judge Schultz recommended denying Robinson's motion to suppress statements made on April 11, 2022 [ECF No. 80] as moot because the Government agreed not to use any of these statements in its case in chief. R&R at 15. Robinson does not object to this recommendation. Def.'s Objs. [ECF No. 103] at 5.

found a firearm and drugs. *See* R&R at 2–3. Robinson objects to Magistrate Judge Schultz's determination that the automobile exception to the warrant requirement applied to this search. Def.'s Objs. at 1. "Under the automobile exception to the Fourth Amendment, an officer may search a vehicle without a warrant if he has probable cause." *United States v. Short*, 2 F.4th 1076, 1078 (8th Cir. 2021) (quoting *United States v. Pacheco*, 996 F.3d 508, 513 (8th Cir. 2021)). To support his objection to the automobile exception's applicability, Robinson advances several challenges to the evidence underlying Magistrate Judge Schultz's probable-cause finding.

Robinson argues that information provided by a confidential informant was unreliable and therefore could not have given the officers the requisite probable cause. This is not persuasive. Answering the probable-cause question with respect to information from an informant depends on the totality of the circumstances. *See United States v. Mays*, 993 F.3d 607, 615 (8th Cir. 2021). When, for example, an informant has a track record of providing reliable information and the information given to officers is particular and verifiable, probable cause exists. *See United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013). Here, the record shows that the informant was generally trustworthy. Officer Kristopher Dauble testified that he "had worked with this specific informant for approximately a year, and during that time [the informant] . . . provided timely, accurate and truthful information that had led to recoveries of narcotics and firearms in the past." Nov. 8 Tr. [ECF No. 87] at 45. The informant knew Robinson. Officer Dauble testified that the informant and Robinson had "hung out on more than one occasion and been in each other's acquaintance for quite some time." *Id.* at 50. The informant "provided very,

2

very specific information on Mr. Robinson's legal name, . . . his street name, his address where he lived and a very descriptive . . . description of the vehicle that he drove, including the temporary tag plate number." *Id*. at 47. The informant described Robinson's vehicle as a "Mercedes SUV with large black wheels." *Id*. Officer Dauble was able to corroborate the informant's vehicle description by running the temporary tag plate in the Minnesota DVS system, where he found that the Mercedes was registered to Robinson. *Id*. Officer Dauble also "provide[d] the [informant] with a confirmatory photo of [] Robinson" to solidify who the informant was talking about. *Id*. at 49. And the informant provided Officer Dauble with reasonably specific information concerning Robinson's possession of a firearm while selling narcotics. *Id.* at 47–48. The informant told Officer Dauble that he had seen the gun, that Robinson kept the gun in the white Mercedes, and that he had seen fentanyl in the Mercedes. *Id.* at 44–48, 52. These facts show that the informant and the informant's information checked enough boxes to give officers probable cause to search Robinson's automobile.

Robinson faults the R&R for finding that the informant "also told MPD that they and Robinson had an ongoing social relationship." Def.'s Objs. at 2 (quoting R&R at 2). Robinson argues: "The officer did not state there was an ongoing social relationship, rather, he stated that the [informant] and [] Robinson 'hung out on more than one occasion and been in each other's acquaintance for some time.'" *Id.* (quoting Nov. 8 Tr. at 50). Robinson continues: "'Hanging out' can mean varying degrees of contact from simply being at the same gathering to spending time together one-on-one. Being acquainted does not necessarily equate to an ongoing social relationship." *Id.* Fair enough. But whether

the informant's information gave officers probable cause to search Robinson's vehicle does not depend on how the informant and Robinson's relationship is best characterized. All the surrounding circumstances show that—regardless of whether the informant and Robinson had an ongoing social relationship or been acquainted for some time—the informant and the informant's information were sufficiently reliable to give officers probable cause to search Robinson's vehicle on August 11, 2021.

Robinson also argues that the informant's information was stale "because the information . . . was at least 11 days old and there was no information from the informant about future activity." Def.'s Objs. at 2. The Eighth Circuit has "no fixed formula for deciding when information has become stale, but . . . consider[s] the nature of the crime being investigated and the property to be searched." *United States v. Petruk*, 929 F.3d 952, 960 (8th Cir. 2019) (quotation omitted). "Where the crime under investigation is of a continuous nature, the passage of time between the last described act and the application for a warrant is less significant." *Id.* (quotation omitted). Here, the 11-day passage of time was not significant relative to the nature of the informant's information or the crime under investigation. The informant previously had told officers that Robinson "was always armed while driving in his vehicle selling narcotics." Nov. 8 Tr. at 47. The informant's information was not stale.

Robinson challenges the credibility of Officer Dauble's testimony that he observed white powder under Robinson's nose when Robinson was arrested and that he noticed an odor of marijuana coming from Robinson's vehicle. Def.'s Objs. at 1–2. Robinson points out that body-worn-camera video does not clearly show the presence of white powder

4

under Robinson's nose when he was arrested.  Def. Ex. 1.[2]  Robinson also points out that

no officer noted the presence of marijuana odor at the scene.  These points are fair, but they

do not show the absence of probable cause to support the search of Robinson's automobile.

Officer Dauble also testified: "Looking in the vehicle, you could see drug paraphernalia

kind of strewn around."  Nov. 8 Tr. at 54.  Officer Dauble later testified that the presence

of these items gave him reason to believe the vehicle had been used in drug trafficking.  *Id.*

at 55–56.  Robinson does not address the presence of these items.  Leave aside the white

powder and marijuana odor.  The presence of these items established probable cause.  Also,

this aspect of Robinson's objections does not undermine the informant's information,

which also was sufficient to establish probable cause.[3]

### *Post-Miranda Statements – August 11, 2021*

Robinson argues that he was unable to make a knowing and intelligent waiver of his

rights, considering the timing of the Miranda advisory measured against his claimed

ingestion of drugs.  Def.'s Objs. at 3–5.  Officer Dauble's body camera recording indicates

that Robinson was handcuffed and being held in the back of a police vehicle after his arrest

when he alerted Officer Dauble that he had swallowed some amount of drugs.  Gov. Ex. 1

---

[2]      In his Objections, Robinson cites to Defense Exhibit No. "4."  The Court has
reviewed all of the exhibits, including the videos, submitted by both the Government and
Robinson.  However, no Defense Exhibit No. 4 was submitted.

[3]      Robinson objects to the R&R's reliance "on the fact that Ofc. Dauble followed Mr.
Robinson previously and observed what he believed to be hand-to-hand drug transactions,
but as the officer testified, he did not use any law enforcement techniques to determine
whether the interactions were drug-related or not."  Def.'s Objs. at 3.  This point is not
persuasive for the simple reason that Officer Dauble testified that he believed the
transactions he observed were narcotic sales based on his "training and experience."
Nov. 8 Tr. at 48.  The record gives no reason to question the veracity of this testimony.

at 11:42:44.  Officers then removed Robinson from the car and administrated Narcan, after which Robinson was transported by ambulance to the hospital for treatment.  Though the exact timing of Officer Dauble's questioning of Robinson is unclear, *see* R&R at 13, the questioning occurred when Robinson was in the hospital, and an audio recording exists of this conversation between Officer Dauble and Robinson, Gov. Ex. 3.

A Miranda waiver is only effective when a defendant acts "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  "The waiver inquiry 'has two distinct dimensions': waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Berghuis v. Thompkins*, 560 U.S. 370, 382–83 (2010) (citation omitted).  "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385.  Still, "[t]he government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence." *United States v. Haggard*, 368 F.3d 1020, 1024 (8th Cir. 2004).

Magistrate Judge Schultz correctly concluded that Robinson made a valid waiver of his Miranda rights during the interview on August 11, 2021.  R&R at 11–14.  Robinson argues that he was unable to make a knowing and intelligent waiver when he was questioned because of the close timing between his claimed overdose and the Miranda waiver.  Def.'s Objs. at 3–5.  Robinson argues that the totality of circumstances, including

his confusion about his date of birth, his disorientation about where he was, and his alleged confusion that anything he said could be used against him, demonstrate that he was not thinking clearly and did not make a knowing and intelligent waiver. *Id.* But total detoxification is not the threshold for an effective waiver. "Sleeplessness, alcohol use and drug use are relevant" to the validity of a Miranda waiver, but "[i]ntoxication and fatigue do not automatically render a confession involuntary." *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)). The correct test is whether a defendant's mental impairments caused his will to be "overborne." *Id.*

The totality of the circumstances here demonstrate that Robinson made a knowing and intelligent waiver of his rights. Though he did appear mildly confused at times, both the video and audio recordings in the record demonstrate that Robinson was conversing actively both during the ambulance ride and with Officer Dauble at the hospital. *See* Gov. Ex. 1 at 12:00:00–12:30:00; Gov. Exs. 3 and 4. I have listened to the audio recording of Robinson's waiver and subsequent interrogation by Officer Dauble. Gov. Exs. 3 and 4. It is true that Robinson sounds somewhat hoarse and perhaps a bit groggy, but I agree with Magistrate Judge Schultz that Robinson was not so intoxicated that he did not understand his rights or the waiver of those rights. This conclusion is borne out by the fact that Robinson responded quickly and appropriately to the questions being asked and plainly appeared to understand what was going on. *See* R&R at 13–14. His responses to Officer Dauble were prompt and on-topic. I also agree with Magistrate Judge Schultz's conclusion that Robinson's response to hearing that part of the Miranda warning explaining that law

enforcement would use his words against Robinson was "quite apt" for the reasons Magistrate Judge Schultz provided in the R&R.  R&R at 13.

Robinson raises two other objections, essentially to the R&R's temporal characterizations of how things occurred that day.  First, Robinson objects to the R&R's statement that Narcan "rapidly reverses an opioid overdose" because there was no testimony to this effect and it is unclear what "*rapidly*" means, or how many doses of Narcan are required to combat an overdose.  Def.'s Objs. at 3.  Whatever "rapidly" might mean in general, what matters here is the totality of the circumstances regarding whether Robinson made a knowing, intelligent, and voluntary waiver of his rights.  As discussed in the preceding paragraph, I conclude he did.  Robinson also objects that the R&R's use of the term "later that day" when describing the lapse of time between his arrest and the Miranda warning in the hospital, arguing that it implies a greater lapse of time than actually occurred.  *Id*. at 4.  The precise temporal proximity between the arrest and Miranda warning is not clear from the record, but I understand that the Miranda warning happened "later"— *i.e.*, *after*—Robinson arrived in the hospital.  And however much (or little) time passed, the point is that Robinson's waiver was voluntary, knowing, and intelligent.

### *CSLI Warrant*

Robinson objects to the R&R's "lack of evaluation of the four corners of the CSLI warrant," which law enforcement used to gather ping location data from a cell phone associated with Robinson and determine that he was at HCMC on April 11, 2022, where he was arrested.  Def.'s Objs. at 5.  As Magistrate Judge Schultz correctly observed, Robinson "has not identified any particular deficiency or defect with the warrant and its

underlying support" in his briefing on this issue.  R&R at 14; *see* ECF No. 67; ECF No. 94 at 20–21 ("The defense challenges the sufficiency of the 'ping,' or CSLI, warrant for a cell phone associated with Mr. Robinson and rests on the four-corners of the warrant.").  Robinson's objection goes no further.  Def.'s Objs. at 5 ("Mr. Robinson objects to the R&R's lack of evaluation of the four corners of the CSLI warrant and subsequent denial of his motion.").  As the R&R properly concluded, "great deference" is afforded to an issuing judge's probable cause determination, *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010), and absent any specific, articulated challenge, that determination will not be disturbed.  *See* R&R at 14–15.

### Search and Seizure of Toyota – April 11, 2022

Robinson raises two objections with respect to the search and seizure of the Toyota on April 11, 2022.  First, Robinson objects to the R&R's conclusion that he lacks standing to challenge the seizure and subsequent search of the automobile.  Second, Robinson challenges the R&R's conclusion that, if Robinson had standing, the automobile exception to the warrant requirement applied.  Robinson argues there was not probable cause to believe that the Toyota contained contraband or evidence of a crime.  Robinson's objection will be overruled because the R&R correctly concluded that Robinson lacks standing to challenge the seizure and subsequent search of the Toyota.

"Fourth Amendment rights are personal rights that may not be asserted vicariously." *U.S. v. Barragan*, 379 F.3d 524, 529 (8th Cir. 2004) (citing *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978)).  Accordingly, an individual asserting Fourth Amendment rights "must demonstrate that he personally has an expectation of privacy in the place searched, and that

his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched[,] he has no standing to claim that they were searched or seized illegally." *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). "The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched." *Id.* (citing *Rakas*, 439 U.S. at 130–31 n.1; *United States v. Kiser*, 948 F.2d 418, 423 (8th Cir. 1991)). When determining whether standing exists, the Court considers the following factors: "ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Gomez*, 16 F.3d at 256 (citing *United States v. Sanchez*, 943 F.2d 110, 113 (1st Cir. 1991)).

Here, Robinson does not have standing to challenge the seizure and search of the Toyota Corolla. There is no dispute that Robinson's friend "Tony" rented the Toyota, and Tony used it to drive Robinson to Hennepin County Medical Center, where Robinson subsequently was arrested. ECF No. 94 at 25–26; ECF No. 98 at 22–24. Robinson does not argue that he had permission to drive the Toyota—he claims only that he had the vehicle's key so he could access it for smoking. Robinson told police that it was not his car, and that he had never driven the car. Gov. Ex. 6 at 14:44:20, 14:46:40. When Robinson was first arrested, he asked the police to tell Tony, who was sitting in the hospital waiting room, that "he's gotta get his keys." Gov. Ex. 5 at 12:56:20. Neither Robinson

nor Tony testified during the suppression hearing about the nature of any permission given. On these facts, the R&R correctly concluded that Robinson was disclaiming any control of the vehicle that would confer standing. *See* R&R at 17.

Robinson relies on two cases to argue that his possession of the vehicle's key and the fact that he had Tony's permission to use the rental car to smoke are enough to give him standing to challenge the search, but these cases are not on point. *See* Def.'s Objs. at 6. In *United States v. Best*, the Eighth Circuit addressed standing in a challenge to a search of a rental vehicle Best was driving when he was stopped for weaving. 135 F.3d 1223, 1224 (8th Cir. 1998). The trooper who pulled Best over testified that "Best had stated that [] Thomas had rented the car for him." *Id*. at 1225. The government argued that Best lacked standing to challenge the validity of the search because the rental agreement did not list Best as an authorized driver. *Id*. at 1225. The Eighth Circuit remanded for a factual determination of "whether Best had permission to use the rental automobile" giving rise to standing. *Id*. These remand-prompting questions are not present here. There is no suggestion that Tony rented the vehicle for Robinson or that Robinson had permission to use the vehicle other than as a place to smoke, and that kind of intermittent use does not come close to the use at issue in *Best*. In *United States v. Bettis*, No. 17-cr-48 (WMW/TNL), 2017 WL 9249436, at *1 (D. Minn. June 19, 2017), there was testimony that Bettis had permission to drive the car that was searched. Bettis was driving a car rented by his spouse, Daniels. Daniels testified that, although Bettis was not listed on the rental agreement and had no valid driver's license, Daniels had given Bettis permission to drive the vehicle to Chicago. *Id*. at *5. As a result, the district court found

that Bettis, "a person with no valid driver's license [and] not listed as an authorized driver on the rental agreement, . . . ha[d] a privacy interest giving rise to standing" to challenge the search of the rental car. *Id*. at *6. Again, we don't have anything like *Bettis*'s facts here. As Magistrate Judge Schultz properly concluded, permission to smoke in the Toyota, like permission merely to ride as a passenger in a car, does not afford a legitimate expectation of privacy in the car to confer standing to challenge a search. *See* R&R at 17 (citing *United States v. Barragan*, 379 F.3d 524, 530 (8th Cir. 2004) (concluding that as a "mere[] passenger," Barragan lacked standing to challenge search of vehicle in which he had no ownership interest)); *see also United States v. Davis*, 943 F.3d 1129, 1132 (8th Cir. 2019); *United States v. Russell*, 847 F.3d 616, 618–19 (8th Cir. 2017); *United States v. Anguiano*, 795 F.3d 873, 878–79 (8th Cir. 2015).

Magistrate Judge Schultz also correctly concluded that if Robinson had standing to challenge the search of the Toyota, the automobile exception to the Fourth Amendment's seizure requirement would apply. R&R at 18. Here, a number of factors together point to a fair probability that there would be contraband or evidence of a crime in the Toyota, including: Robinson's nervous behavior in the hospital when questioned about the Toyota key; his insistence that it was not his car; his repeated requests that the police call Tony to get the keys; Officer Dauble's knowledge of a federal warrant out for Robinson's arrest; Robinson's previous arrest in August; Robinson's reputation for engaging in drug activity; and the police's recent surveillance of Robinson, where they witnessed him riding in different vehicles and conducting suspected narcotics transactions. *See* ECF No. 88 at 22, 24–25; Gov. Ex. 5 at 12:55:30, 12:57:13, 12:57:45; Gov. Ex. 6 at 14:44:00, 14:46:41; *see*

*also United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004) ("Given Hill's nervous behavior, his warrant for a controlled substance crime, his reputation for engaging in drug activity, and, most importantly, the indication from a qualified drug dog that drugs were in the vehicle, we hold the district court did not err in finding there was probable cause to search the vehicle's interior for such contraband."). Accordingly, if Robinson had standing to challenge the search, law enforcement would have had probable cause to justify seizing the car without a warrant pursuant to the automobile exception.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1.     The Objections to the Report and Recommendation [ECF No. 103] are **OVERRULED**;

2.     The Report and Recommendation [ECF No. 101] is **ACCEPTED** in full;

3.     Robinson's Motion to Suppress Statements, Admissions, and Answers [ECF No. 30] is **DENIED**;

4.     Robinson's Motion to Suppress Search and Seizure [ECF No. 31] is **DENIED**;

5.     Robinson's Motion to Suppress Search and Seizure – Toyota Camry [ECF No. 66] is **DENIED**;

6.     Robinson's Motion to Suppress Search and Seizure – SW for live cell site pings (location information) [ECF No. 67] is **DENIED**;

7.      Robinson's Motion to Suppress Search and Seizure SW for Toyota Camry [ECF No. 68] is **DENIED**; and

8.      Robinson's Second Motion to Suppress Statements [ECF No. 80] is **DENIED** as moot.


Dated:  March 29, 2023                                      s/ Eric C. Tostrud
                                                            Eric C. Tostrud
                                                            United States District Court

14